IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RANDOLPH COPES, | * | |
| Plaintiff | | |
| v. | * | CIVIL ACTION NO. JFM-12-441 |
| DR. CLEM, et al., | * | |
| Defendants | | |
| | *** | |

MEMORANDUM

On February 13, 2012, self-represented plaintiff Randolph Copes, presently confined at Eastern Correctional Institution (ECI), filed a civil rights action under 42 U.S.C. § 1983. Plaintiff seeks compensatory damages and injunctive relief against two correctional medical employees defendants Dr.Clem and Physician's Assistant Jessica Cecil, who allegedly failed to provide plaintiff adequate medical care regarding a head injury he suffered when he fell climbing into a top bunk.[1]  *Id.*

---

[1] Plaintiff also sought injunctive relief. ECF No. 1. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial than the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7,  20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011).  Plaintiff's request for injunctive relief shall be denied, as he cannot clearly establish that he would suffer immediate and irreparable injury, loss, or damage if the requested relief is not granted.

Plaintiff has also filed a motion to appoint counsel. ECF No. 17.  A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[1] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982).  The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant.  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed.  *Id.*  Upon careful consideration of the motions and previous filings by plaintiff, the court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so.  The issues pending before the court are not unduly complicated.  Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent plaintiff under §1915(e)(1).

On December 19, 2012, plaintiff filed a "supplemental complaint" naming correctional defendants. ECF No. 18. Defendants have moved to strike the amended complaint (ECF No. 19) and plaintiff has filed a response in

Defendants have filed a "Motion to Dismiss" along with exhibits. ECF No. 9. Plaintiff has filed a response/motion to dismiss or, in the alternative motion for summary judgment, in opposition thereto. *See* ECF No. 13. Defendants have filed a reply to which plaintiff has responded. *See* ECF Nos. 14 & 15. As discussed, *infra*, the motion will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, because materials outside the four corners of the pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md.). Defendants' motion to dismiss, construed as a motion for summary judgment, shall be GRANTED.

**Standard of Review**

Defendants' motion is styled as a motion to dismiss and as such implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger*, 510 F.3d at 450. However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).[2]

---

opposition. ECF No. 20. The motion to strike shall be granted. Plaintiff filed his amended complaint 217 days after defendants filed their motion to dismiss. *See* Fed. R. Civ. Pro. 15. The amended complaint is not timely and plaintiff has failed to secure the consent of the opposing party or leave of the court to file same. If plaintiff believes his constitutional rights have been violated by correctional defendants, he is free to file a new civil rights complaint setting out his claims and the parties he seeks to sue.

[2] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing

---

under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

affidavit requirement of former Rule 56(f)).[3]

Plaintiff has not filed an affidavit under Rule 56(d).[4] Moreover, I am satisfied that it is appropriate to address the defendants' motion as one for summary judgment.

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

---

[3] Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

[4] If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Factual Background**

Plaintiff alleges that on July 11, 2011, while attempting to get onto his bunk, the chair he was standing on collapsed causing him to fall backward. Plaintiff grabbed the top bunk as he fell, pulling the bunk on him. He states that he had been assigned a bottom bunk by Dr. Yah Yah but the order was never followed. Plaintiff states he injured his neck and back and struck his head causing a concussion. Plaintiff indicates others told him he was unconscious for several minutes.

Plaintiff states that after his fall he was taken to the emergency room and released later that night back to ECI. Plaintiff alleges he was discharged from the ECI Infirmary by defendant Clem who failed to review his discharge instructions because they had been misfiled by a nurse. Plaintiff states he was not given bed rest upon his discharge from the infirmary until his condition worsened a few days later. *Id*.

Plaintiff states that on July 12, 2011, Nurse Chewning discharged him to population based upon Clem's orders. He states that on July 14, 2011, defendant Cecil advised him that he

was not getting an order for a bottom bunk and advised him that inmates regularly lie about their injuries. Plaintiff states that Cecil discriminated against him by treating him based on how she feels rather than on his symptoms. He also alleges Cecil has manipulated plaintiff's sick call slips. *Id*.

The medical records demonstrate that plaintiff was immediately seen after the fall on July 11, 2011 and was transported to the emergency room at Peninsula Regional Medical Center ("PRMC"), where he was evaluated and numerous diagnostic tests, including CT scans and x-rays were performed . ECF No. 9, Ex, 1, p. 15-34. He was diagnosed with contusions and a head injury which did not appear serious at that time. He was released the same day, provided discharge instructions orally and in writing, and provided analgesic pain medication. Scans showed no bleeding in plaintiff's brain. Plaintiff's "custom instructions" directed that he be observed that night to insure he did not develop any serious symptoms of head injury. *Id*. p. 15-34; ECF No. 14, Ex. 2, Clem Affidavit. Clem avers that discharge instructions from medical institutions are directed toward the patient and are not binding upon other doctors.[5] ECF No. 14, Ex. 2.

Plaintiff returned to the infirmary at ECI, where he remained overnight. Notes reflect that plaintiff was evaluated by nurses at 4:04 a.m. and 8:37 a.m. on July 12, 2011. *Id*., p. 50-53. He was discharged at approximately 11:00 a.m., after evaluation by Clem, with instructions to do stretches. Plaitniff was provided analgesic medication. It was noted that plaintiff requested bed rest and feed-in but Clem did not feel it was necessary. *Id*., p. 54-56.

Plaintiff's contention that Clem did not see his discharge instructions is belied by the record. The information that was misfiled pertained solely to a description of the initial

---

[5] Plaintiff was never diagnosed with a concussion. ECF No. 14, Ex. 2.

6

accident.[6] *Id*., p. 57-58.   Additionally, Clem avers that plaintiff was observed in the infirmary for approximately 11 hours.  During this time neurological checks were completed.  Plaintiff exhibited no symptoms of concussion or acute brain injury.  Thus, Clem decided plaintiff was well enough to be discharged from the infirmary and feed-in status and bed rest were unwarranted. ECF No. 14, Ex. 2.

Plaintiff filed a sick call sip on July 12, 2011, requesting bed rest.  He was seen two days later by Cecil, who noted that plaintiff  complained of neck and butt pain and said he was nauseous when he stood up.  He stated that he had not eaten since Monday because he was dizzy, but offered that he was eating one time a day.  Cecil noted that when offered bed rest/feed in he said he did  "not want bed rest, he wants to go out into the yard and walk."[7]  *Id*., p. 59.  She reviewed the scans taken of plaintiff's head and spine which revealed no fractures or other anomalies. Plaintiff's blood pressure was elevated.  He was provided medication and his blood pressure improved.  Plaintiff reported that he felt better and wanted to lie down.  Cecil's notes reflect that, contrary to plaintiff's assertion, he was ordered bottom bunk status for one month and that plaintiff also reported that his cellmate had let him use the bottom bunk.  *Id*., p. 2, 7, & 60-61.

Plaintiff failed to appear for a nurse sick call on July 18, 2011. *Id*, p. 6 &  62.  He was re-evaluated on July 23, 2011 during an unscheduled nurse visit wherein he complained of dizziness.  He was placed on bed rest and feed-in.  *Id*., p. 1 & 64.  He was seen again by Cecil on July 28, 2011.  Plaintiff was combative with Cecil who then called upon P.A. Bush to assist in the evaluation of plaintiff.  Plaintiff was again educated about his condition.  Exercises and

---

[6] In his opposition to the dispositive motion, plaintiff alleges, for the first time, that he was never evaluated by any medical personnel in the infirmary. ECF No. 13.

[7] Plaintiff disputes this note.  He states that he was still in pain and dizzy and therefore "why would he want to go to the yard."  ECF No. 13.

medication were reviewed and bed rest and feed-in status were ordered for two weeks when he was to be seen again by the physician.[8] *Id.*, p. 67.

Plaintiff continued submitting sick call sips and was referred for physical therapy for his ongoing complaints of pain. He was provided physical therapy from September 6, 2011 to January 17, 2012. ECF No. 13.

## Discussion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that

---

[8] Plaintiff claims that during this time he submitted "numerous sick call slips because of the pain that I was still suffering but I wasn't' call again until 7-28-11 two weeks later." ECF No. 13. He claims that Cecil's failure to refer him to a physician after three visits raising the same complaints "constitutes a negligent breach of duty and unreasonableness." ECF No. 13.

risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

  Plaintiff's allegations that he was not provided necessary medical treatment for injuries sustained in a fall is belied by the record. Plaintiff was evaluated, transported to the emergency room, received care in the prison infirmary, was provided bed rest and bottom bunk status while he recovered, and was regularly evaluated by medical providers. There is no evidence that any further treatment was deemed necessary. Plaintiff maintains that he should have been kept in the infirmary for 24 hours to observe him for signs of concussion. Plaintiff's disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

  In granting summary judgment to defendants the court does not imply that plaintiff is not entitled to medical treatment for his serious conditions. The right to treatment, however, is

"limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable.*" *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977) (emphasis added). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970). There are no exceptional circumstances in this case. Plaintiff has been evaluated repeatedly and been provided appropriate accommodations. Plaintiff baldly claims that failure to review the emergency room discharge instructions constituted an Eighth Amendment violation. Even if the instructions were misfiled and therefore not reviewed by Clem, such a claim, at most, states nothing more than a claim of medical malpractice and negligence.[9] "[A]n inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). Accordingly, defendants are entitled to summary judgment as to plaintiff's Eighth Amendment claim.

For the reasons stated, summary judgment is granted in favor of defendants. A separate Order shall be entered in accordance with this Memorandum.

<u>March 13, 2013</u>     <u>    /s/                              </u>
Date                              J. Frederick Motz
                                  United States District Judge

---

[9] Under Maryland law, a claim of medical malpractice could proceed only after complete review before the Maryland Health Claims Arbitration Board. *See* Md. Code Ann., Cts & Jud. Proc., §3-2A-01 et seq.; *see also Davison v. Sinai Hospital of Balt. Inc*, 462 F.Supp. 778, 779-81 (D. Md. 1978); *Group Health Ass'n, Inc. v. Blumenthal*, 295 Md. 104, 114 (1983). There is no demonstration that plaintiff has sought or completed such review. This court declines jurisdiction over these state court claims, and dismisses them without prejudice. *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs,* 383 U. S. 715, 726 (1966).